**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES STAHL, et al.,** | : | Case No. 04CV1327 |
| | : | |
| Plaintiffs, | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| v. | : | |
| | : | |
| **HARTFORD CASUALTY INSURANCE** | : | **MEMORANDUM AND ORDER** |
| **COMPANY,** | : | |
| | : | |
| Defendant. | : | |

Plaintiffs James D. Stahl and David Patterson (collectively "Plaintiffs") originally filed this lawsuit in the Summit County Court of Common Pleas on June 9, 2004, to compel insurance coverage for a collapsed retaining wall on their business property. The Plaintiffs seek payment of their claim for approximately $111,760.36 for the costs associated with repair of the retaining wall. The defendant is Hartford Casualty Insurance Company ("Hartford" or "Defendant"), Plaintiffs' insurer. Hartford is a Connecticut corporation with its principal place of business in Connecticut. Citing diversity jurisdiction, Hartford removed this case to this Court on July 14, 2004. Defendant filed a Summary Judgment Motion on Plaintiffs' breach of contract and bad faith claims, and Plaintiffs filed a Cross-Motion for Summary Judgment on the breach of contract claim. For the reasons stated below, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**

In January 1999, Plaintiffs purchased business property in Cuyahoga Falls, Ohio and insured it with Hartford. In April 1999, Plaintiffs began observing problems with the retaining wall, which was constructed by the previous owners. Before the retaining wall collapsed, Plaintiffs obtained an opinion from an engineer at Troike-Rostedt Engineering, Inc., Mr. Troike, who opined that the wall had been improperly constructed. Troike states that "the wall was most likely not built in accordance with the mfg. recommendations." After the wall collapsed, Summit Testing and Inspection Company investigated the collapse and confirmed Troike's opinion, saying "it is our opinion that the retaining wall was improperly built." Both parties agree that the wall was improperly, or negligently, built.

Despite the previous owners' claim that the wall was properly built, Plaintiffs followed Mr. Troike's advice and took preventative measures designed to prevent deterioration of the wall. Plaintiffs conducted proper wall maintenance and completed weeding and the removal of weight from the proximity of the wall. In his letter of October 1999, Mr. Troike states that there was no further deterioration of the wall between May 1999 and October 1999. Plaintiffs allege that they did not observe any further deterioration of the wall until the wall failed on or about July 7, 2003. Plaintiffs assert, and defendants do not dispute, that the failure of the retaining wall did not result from, nor was it in conjunction with, the collapse of a building.

Plaintiffs filed a claim with Hartford for damage to the retaining wall soon after it collapsed. Plaintiffs contacted Hartford for coverage under the All Risk Insurance Contract ("Policy"). The claim was denied based on several policy exclusions: earth movement, water, collapse, weather conditions, acts or decisions, negligent work, and miscellaneous types of loss. Specifically, Defendant ultimately denied

their claim on the bases of the "negligent work" and the "collapse" exclusions within the Policy.

The Policy, under the main section heading "A. COVERAGE," states that "[w]e will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations...caused by or resulting from any Covered Cause of Loss." (Policy, § A at p.1). The Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is either: (a.) Excluded in Section B., EXCLUSIONS; or (b.) Limited in Paragraph A.4, Limitations." (Policy, §§ A.4, B, at p. 2).

The central questions involve the interpretation of two sections under the "exclusion" section: the "negligent work" and "collapse" sections. The policy contains a "negligent work" exclusion, which excludes damage caused by negligent work, including negligent design and construction. (Policy, § B.3.c, at p. 11). That section reads:

> We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage.
>
> **Negligent Work**: Faulty, inadequate or defective:
> (1) Planning, zoning development, surveying, stilling;
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> (3) Materials used in repair, construction, renovation or remodeling; or
> (4) Maintenance of part or all of any property on or off the described premises.

(*Id.*)

The Policy also contains a specific exclusion for damage due to collapse. (Policy, § B.2.h., at p. 10). That section provides that "[w]e will not pay for loss or damage caused by or resulting from ... [c]ollapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a

3

covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage." (*Id.*). The Additional Coverage section states:

> **Additional Coverages**
>
> b. Collapse
>
> We *will* pay for loss or damage caused by or resulting from risks of direct physical loss *involving collapse of a building or any part of a building* caused only by one or more of the following:

(Policy, § A.5.b, at p. 3) (emphasis added).

Following the denial of the claim, there were several exchanges between the parties, during which the parties discussed the relevant policy exclusions. Ultimately, Hartford stood by the denial, which was supported, in Hartford's view, by Plaintiffs' full acknowledgment that the retaining wall collapse did not involve a building and that the wall was negligently constructed.

## II. LAW

Because this Court has jurisdiction based on diversity, Ohio law is controlling. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Consistent with other states, Ohio courts hold that an insurance policy is a contract, and the interpretation of a written contract is a matter of law. *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984); *see also Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096, 1102 (Ohio 1992) (noting that the Ohio Supreme Court "has consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts"). Questions regarding the extent of coverage provided by an insurance policy "are determined, in the first instance, by an examination of the relevant insurance documents, utilizing therein the familiar rules of construction and interpretation applicable to contracts generally." *Gomolka v. State*

*Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982).

Like contracts, where the language of an insurance policy is clear and unambiguous, courts "must enforce the contract as written and give the words their plain and ordinary meaning." *Cincinnati Indem. Co. v. Martin*, 710 N.E.2d 677, 679 (Ohio 1999) (citing *Hybud Equip. Corp.*, 597 N.E.2d at 1102). Language reasonably susceptible to more than one interpretation, however, is to be "construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (discussing Ohio's "well-settled" rule of *contra proferentem*). Ohio courts have strongly emphasized this rule in the interpretation of exclusions from liability. *See United States Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 687 N.E.2d 717, 719 (Ohio 1997) (noting the long-standing rule in Ohio that "an exclusion from liability must be clear and exact in order to be given effect"). Thus, where several interpretations are possible, a court should adopt the interpretation in favor of coverage. *Ambrose v. State Farm Fire & Cas. Co.*, 592 N.E.2d 868, 870 (Ohio Ct. App. 1990). Similarly, a court should construe exclusions and exceptions to coverage narrowly; to be permissible, exclusions need to be express or "must arise by necessary implication from the policy language." *Edmondson v. Motorists Mut. Ins. Co.*, 356 N.E.2d 722, 723 (Ohio 1976).

### III. DISCUSSION

Plaintiffs bring both a breach of contract claim and a bad faith claim. Where an insured alleges bad faith in denying an insurance claim, the insured must first prove an underlying breach of contract. *See Essad v. Cincinnati Casualty Co.*, 2002 WL 924439, 2002-Ohio-2002 (Ohio App. 7th Dist. 2002); *see also Mid-American Fire & Cas. Co. v. Broughton*, 798 N.E.2d 1109, 1115 (Ohio Ct. App. 2003). As such, the Court will first analyze the breach of contract claim, and then turn to the bad faith claim.

### A. Breach of Contract

Defendant argues that it did not breach its insurance contract with Plaintiffs because the Policy does not cover the damage to the retaining wall. Defendant relies on the specific exclusions found in the "collapse" and "negligent work" sections of the Policy to deny Plaintiff's claims.

#### 1. Collapse Exclusion

Hartford contends that its policy excludes coverage for collapse unless the loss falls within the Policy's Additional Coverage for Collapse. The Plaintiffs respond by arguing that the "Collapse" section under the "Additional Coverage" section specifies that the collapse exclusion should be considered only when there is a collapse of a building. Plaintiffs then argue that, after this general explanation, one would reasonably expect any further section dealing with collapse to be more narrowed and specific. Thus, the Plaintiffs argue that, because a building did not collapse, the "Collapse" section is inapplicable and does not specifically exclude the collapse of a retaining wall. The Court disagrees.

The "Collapse" section of the policy appears under the main heading "Exclusion." The introduction to the subheading to which the "Collapse" section appears reads as follows: "We will *not* pay for loss or damage caused by or resulting from...[c]ollapse, except as provided in the Additional Coverage for Collapse." (Policy, § B.2.h., at p.10) (emphasis added). Accordingly, the plain language of the insurance contract provides that the general rule is that there is no coverage for the collapse of any structure. The exception to that general rule is found in the "Additional Coverage for Collapse" section, which states that the policy "*will* pay for loss or damage caused by or resulting from risks of direct physical loss *involving collapse of a building* or any part of a building" caused only by certain specified events. (Policy, § A.5.b, at p.3) (emphasis added). Therefore, loss due to collapse is not covered by the Policy *unless* the loss involves the collapse of a building. In this case, both parties agree

6

that the collapse of this retaining wall did not result from, nor was it in conjunction with, the collapse of a building. Thus, there is no Additional Coverage that applies and the general exclusion for all collapse losses contained in section B.2.h is the controlling section.

### 2. Negligent Work Exclusion

Hartford also cites the "negligent work" exclusion contained in the policy as a basis for denying coverage. Both parties agree that the retaining wall was improperly built. Hartford contends that the plain language of the provision excludes coverage in this case because of the negligent construction of the wall. Plaintiffs argue that the "negligent work" section applies only to negligent work done by or with the authorization of the insured party, not negligent work performed by previous owners, as occurred in this case. Further, Plaintiffs contend that the absence of time limits as to when the negligent work must have occurred renders the section ambiguous and entitles Plaintiffs to coverage. Finally, Plaintiffs argue that the "ensuing loss" provision ("if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage") also renders the section ambiguous and mandates interpretation in favor of coverage.

Hartford responds by contending that the mere absence of language specifying ownership-requirements or timeframe-limitations does not defeat application of the "negligent work" exclusion or create alternative interpretations. Regarding the ensuing loss provision, both parties cite competing cases in which courts have interpreted ensuing loss provisions with different results. *See Weeks v. Coop. Ins. Companies*, 817 A.2d 296 (N.H. 2003) (rejecting an argument that an ensuing loss provision made the negligent work exclusion ambiguous); *see also Husband v. Lafayette Ins. Co.*, 635 So.2d 309 (La. Ct. App. 1994) (citing trial court record in which ensuing loss provision was found to be patently ambiguous).

7

While the positions of both parties have some support, the Court declines to resolve this dispute. As discussed above, the "collapse" exclusion clearly applies to this case and provides a sufficient basis for Hartford to deny the claim. Therefore, there is no need for the Court to address whether the "negligent work" exclusion is also applicable.

### B. Bad Faith Claim

Under Ohio law, an insurer may be liable for bad faith only if the insurance claim is denied without reasonable justification, *i.e.*, where the insurer refuses to pay the claim for reasons that are arbitrary or capricious. *See Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399 (Ohio 1994); *Hart v. Republic Mut. Ins. Co.*, 87 N.E.2d 347, 349 (Ohio 1949). Where the insured alleges bad faith in denying a claim, the insurer must first prove an underlying breach of contract. *See Essad v. Cincinnati Casualty Co.*, 2002 WL 924439, 2002-Ohio-2002 (Ohio App. 7th Dist. 2002); *see also Mid-American Fire & Cas. Co. v. Broughton*, 798 N.E.2d 1109, 1115 (Ohio Ct. App. 2003). Although, as here, a Defendant may initially deny Plaintiffs' claim based on all the exclusions stated in the policy, as long as one exclusion was appropriate in negating a breach of contract, there can be no bad faith claim. *Id.* If, however, the insured succeeds in proving the contract breach, it must then prove that the claim was denied without reasonable justification. *Id.*

As discussed above, Plaintiffs' claim was not covered under the Policy because of the general "collapse" exclusion. Therefore, Hartford neither breached the contract nor acted arbitrarily or capriciously in denying the claim. Hartford was reasonably justified in denying Plaintiffs' claim based on the "collapse" exclusion, and is thus not liable for bad faith.

## IV. CONCLUSION

Because the retaining wall collapsed of its own force as a result of negligent construction, the interpretation of the Policy is a matter of law. On its face, the Policy is not ambiguous and, therefore, Hartford is entitled to summary judgment on the breach of contract claim because the Policy, by its plain language, does not cover the collapse of a retaining wall under these circumstances. Defendant, furthermore, is entitled to summary judgment on Plaintiffs' bad faith claim, since Hartford neither breached the contract nor acted arbitrarily or capriciously in denying Plaintiffs' insurance claim. Accordingly, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated**: September 27, 2005